IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. __5:19-cv-00429__ |
| v. | ) ) | **COMPLAINT** |
| LEGACY LAND MANAGEMENT, INC., TAMS MANAGEMENT, INC., KENTUCKY COAL TRANSPORT, LLC, and SOUTHERN COAL CORPORATION, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Charging Party Michael Atkins, who was adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission alleges that Defendants Legacy Land Management, Inc., Tams Management, Inc., Kentucky Coal Transport, LLC, and Southern Coal Corporation violated Title VII by unlawfully retaliating against Atkins for participating in a Title VII lawsuit and opposing practices that were unlawful under Title VII.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to

Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of West Virginia.

<u>PARTIES</u>

3.      Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Legacy Land Management, Inc. ("Legacy Land") has continuously been doing business in the State of West Virginia and in Raleigh County.

5.      At all relevant times, Legacy Land had at least 15 employees.

6.      At all relevant times, Legacy Land continuously has been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

7.      Defendant Southern Coal Corporation ("Southern Coal") is a Delaware corporation with numerous subsidiaries and affiliated companies doing business in the coal-mining industry, including, but not limited to Kentucky Coal Transport, LLC and Tams Management, Inc.

8.      At all relevant times, Southern Coal was owned by James C. Justice II, James C. Justice III, and Jillean L. Justice (the "Justice Family").

9.      At all relevant times, Southern Coal was the sole member and owner of Defendant Kentucky Coal Transport, LLC ("Kentucky Coal").

10.     Southern Coal and Kentucky Coal share principal office space, which was previously at 818 N. Eisenhower Drive, Beckley, West Virginia, and later moved to 302 S.

Jefferson Street, Roanoke, Virginia.

11.     Southern Coal and its subsidiaries and affiliated companies, including, but not limited to, Kentucky Coal Transport, LLC and Tams Management, Inc., share the same in-house general counsel.

12.     At all relevant times, Kentucky Coal contracted with Legacy Land to provide coal truck driving services at coal mines owned by the Justice Family, including, but not limited to, a coal mine in Tams, West Virginia (the "Tams job").

13.     One or more trucks used for hauling coal at the Tams job had Kentucky Coal's name on their sides.

14.     At all relevant times, Tams Management was owned by members of the Justice Family.

15.     At all relevant times, an employee of Tams Management, Ed Flick, was responsible for all coal hauling operations within Southern Coal's affiliated companies, including, but not limited to, supervision of the Legacy Land employees who drove coal trucks at the Tams job.

16.     At all relevant times, Flick was authorized to hire and fire employees on behalf of Legacy Land.

17.     Since at least 2011, Flick's employment has been transferred more than once among Southern Coal affiliated companies, including, but not limited to, Tams Management and Kentucky Coal or its predecessor.

18.     During the relevant period, employees of Tams Management and other Southern Coal affiliated companies also drove coal trucks at the Tams job.

19.     At all relevant times, Tams Management, Kentucky Coal, and Southern Coal, individually or in the aggregate as an integrated enterprise/single employer or joint employers, had

at least 15 employees.

20.     At all relevant times, Southern Coal has continuously been doing business in the State of West Virginia and in Raleigh County.

21.     At all relevant times, Southern Coal continuously has been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

22.     At all relevant times, Kentucky Coal has continuously been doing business in the State of West Virginia and in Raleigh County.

23.     At all relevant times, Kentucky Coal continuously has been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

24.     At all relevant times, Tams Management has continuously been doing business in the State of West Virginia and in Raleigh County.

25.     At all relevant times, Tams Management continuously has been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

26.     At all relevant times, each named Defendant has functioned as an employer, or Defendants have functioned as an integrated enterprise/single employer or joint employers.

ADMINISTRATIVE PROCEDURES

27.     More than 30 days prior to the institution of this lawsuit, Michael Atkins filed a charge with the Commission alleging violations of Title VII.

28.     On August 29, 2018, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting

Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

29.     The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

30.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

31.     On September 28, 2018, the Commission issued to Defendants a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

32.     All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

33.     In August 2015, and continuing thereafter, Defendants engaged in unlawful employment practices in violation of Title VII, Section 704(a), 42 U.S.C. § 2000e-3(a), by retaliating against Michael Atkins because of his participation in a lawsuit under Title VII and his opposition to practices made unlawful by Title VII, as follows:

(a)     Defendants hired Atkins in April 2015 to work for Legacy Land as an off-road coal truck driver at the Tams job.

(b)     Atkins' supervisor at the Tams job was Tams Management employee Ed Flick.

(c)     Before Defendants hired Atkins, Atkins was employed as a coal miner with Rhino Energy WV, LLC d/b/a Rhino Eastern LLC ("Rhino").

(d)     In 2014, in the Southern District of West Virginia, Beckley Division, EEOC sued Rhino under Title VII for subjecting foreman Michael Jagodzinski to a hostile work

environment based on his national origin and for retaliating against him for opposing the harassment (Civil Acton No. 5:14-cv-26250).  As alleged by EEOC in that action, the harassment and retaliation culminated in false accusations of sexual harassment against Jagodzinski and the termination of his employment for pretextual reasons.

(e)      Jagodzinski was Atkins' supervisor at Rhino, and Atkins witnessed the unlawful harassment and retaliation Jagodzinski suffered.

(f)      In EEOC's investigation of Jagodzinski's charge, EEOC interviewed Atkins, and Atkins told EEOC about the harassment of Jagodzinski he had witnessed at Rhino.

(g)      Atkins was a valuable employee at Defendants' Tams job.  In June or July 2015, Atkins quit his job with Legacy Land briefly to take another job, but Flick called him several times urging him to return.

(h)      At Flick's insistence, Atkins went back to work at the Tams job on July 6, 2015.

(i)      In mid-July 2015, Atkins heard a rumor that all of the drivers at the Tams job were going to be moved to Defendants' Coal Mountain job, which was located a substantially greater distance from Atkins' home than the Tams job was.

(j)      At that time, Atkins asked Flick whether the rumor was true, and Flick replied that some drivers would be moved to Coal Mountain, but Flick was not going to move Atkins because he needed him at the Tams job.

(k)      At that time, Flick had decided to keep Atkins at the Tams job because he lived nearby and was reliable.

(l)      In August 2015, Atkins learned that he would be required to testify at a deposition in EEOC's case against Rhino in September 2015.

(m)      On or about August 10, 2015, Atkins told Flick he would need some time off in

September for a court date, and Flick replied, "no problem."

(n)     On Monday, August 31, 2015, Atkins reminded Flick of his need for time off to testify in the case and told him the date had been set for September 17, 2015.  At that time, Flick asked Atkins to cancel the deposition and asked what the case was about.

(o)     At that time, Atkins told Flick he could not cancel the deposition and informed him that it was a federal case involving employment discrimination.

(p)     At that time, Atkins also told Flick he would be testifying for his former boss, who had been wrongfully discharged.

(q)     Flick then asked Atkins whether he was going to testify against a coal company. When Atkins confirmed that he was, Flick told him he should never testify against a coal company.

(r)     After Atkins informed Flick he would be testifying against a coal company in a federal employment discrimination suit, Defendants took a series of actions against him that a reasonable worker would find materially adverse, including but not limited to actually or constructively discharging him.

(s)     Moments after Atkins informed Flick he would be testifying against a coal company in a federal employment discrimination suit, Flick spoke with a mechanic, returned to his conversation with Atkins, told Atkins he could not drive his truck because it was unsafe, and instructed Atkins to remove his belongings from the truck.  Although there was a spare truck on the premises that Atkins could have driven, Flick sent Atkins home and told him he would call him when his truck was ready.

(t)     Flick never called Atkins with any information about his truck or to tell him to return to work.

7

(u)      On Friday, September 4, 2015, Atkins went to the Tams job site to pick up his paycheck.  While there, he asked Flick when his truck would be ready, and Flick told him his truck had already been driven to the Coal Mountain job and there was no work for him at the Tams job.

(v)      At that time, Flick told Atkins that if he wanted to work he would have to transfer to Coal Mountain.

(w)      Drivers at the Tams job and the Coal Mountain job worked 12-hour shifts.  Atkins was concerned that transferring to Coal Mountain and adding substantially more driving time to his daily commute to and from work would put his safety at risk.

(x)      Accordingly, Atkins told Flick he did not want to go to Coal Mountain due to the increased distance, but Flick offered no alternative.

(y)      Atkins declined the transfer, and his employment was terminated.

(z)      By requiring Atkins to commute to and from Coal Mountain as a condition of continuing his employment with Defendants, Defendants created working conditions sufficiently intolerable that a reasonable person would resign.

(aa)     The reasons Defendants asserted for why Atkins was sent home from the Tams job, was not permitted to return to work there, and was separated from employment were a pretext for unlawful retaliation.

(bb)     From the time of the termination of Atkins' employment with Defendants in September 2015, through Fall 2016, several drivers continued to haul coal at the Tams job.

(cc)     In April 2016, Atkins filed a charge with EEOC regarding Defendants' unlawful retaliation.

(dd)     In or around November 2016, the employees who had been sent to the Coal

8

Mountain job were called back to the Tams job, but no one called Atkins to return to the Tams job.

34.     The effect of the practices complained of in paragraphs 33(a) through 33(dd) has been to deprive Atkins of equal employment opportunities and otherwise adversely affect his status as an employee because of his participation in a lawsuit under Title VII and his opposition to practices made unlawful under Title VII.

35.     The unlawful employment practices complained of in paragraphs 33(a) through 33(dd) above were intentional.

36.     The unlawful employment practices complained of in paragraphs 33(a) through 33(dd) above were done with malice or with reckless indifference to Atkins' federally protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliation against employees who oppose any practice made an unlawful employment practice by Title VII or who make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII.

B.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees who have engaged in protected activity and that eradicate the effects of their past and present unlawful employment practices;

C.     Order Defendants to make whole Michael Atkins, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief

9

necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Atkins or, in lieu thereof, front pay;

D.     Order Defendants to provide compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E.     Order Defendants to provide compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including pain and suffering, emotional distress, indignity, inconvenience, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial;

F.     Order Defendants to pay punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial;

G.     Grant such further relief as the Court deems necessary and proper in the public interest; and

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.


Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Washington, D.C.

JAMES L. LEE
Acting General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

/s/ Debra Lawrence
DEBRA LAWRENCE
Regional Attorney
Philadelphia District Office

/s/ Kate Northrup
KATE NORTHRUP
Supervisory Trial Attorney
Baltimore Field Office
kate.northrup@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Tel. 410-209-2722

/s/ Jessi Isenhart
JESSI ISENHART
Senior Trial Attorney
Cleveland Field Office
WV Bar No. 10692
jessi.isenhart@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
Tel. 216-522-7676